(Nos. 31828-31829.

HATTIE E. MOHLER, Appellee, *vs.* THE DEPARTMENT OF LABOR *et al.,* Appellants.—MARY PRATT, Appellee, *vs.* THE DEPARTMENT OF LABOR *et al.,* Appellants.

*Opinion filed March 22, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellants.

Mr. JUSTICE DAILY delivered the opinion of the court:

In two separate hearings held in the summer of 1949, the board of review of the Department of Labor of this State entered decisions finding that Hattie E. Mohler and Mary Pratt, the respective claimants, were ineligible for benefits provided by the Unemployment Compensation Act. (Ill. Rev. Stat. 1949, chap. 48, pars. 217-250.) Each claimant then filed a complaint in the circuit court of Iroquois County seeking review under the provisions of the Administrative Review Act. (Ill. Rev. Stat. 1949, chap. 110, pars. 264-279.) The circuit court, after first remanding the cause to the board to hear subsequently discovered evidence, entered orders reversing the board in each case, and holding that the claimants were entitled to benefits. The Department of Labor, its Director and the board, have perfected separate appeals to this court from each order. We have consolidated them for purposes of review because they present identical issues of law under substantially similar facts.

With respect to appellee Hattie E. Mohler, the record discloses her to be a woman sixty-five years of age, who,

for twenty-eight years, had been employed by the Milford Canning Company, Milford, Illinois, during the asparagus pack which lasts from six to eight weeks in the spring of each year, and during the corn pack which lasts from four to six weeks in late summer of each year. She had never worked for any other industry, and, during the periods the canning factory was not operating, worked at such jobs as baby sitting, washing, practical nursing and housework in the vicinity of her home at Stockland, which is some seven miles from Milford. During the canning seasons, appellee found transportation to Milford in private cars, or else took a bus which was in service while the cannery operated. In 1948, after each seasonal period of employment, appellee filed claim for unemployment compensation benefits, which were paid to her up until she filed a claim for the week of September 25, 1948. The refusal of the Department of Labor to pay the latter claim has generated this litigation. She testified that subsequent to the termination of her employment in September, 1948, she sought work at restaurants both in Milford and Stockland, but that she made no other effort to secure employment in that year. In December, 1949, she applied for work at two stores in Watseka, Illinois, but made no application to industries of that city which employed women.

The facts appearing in the record relative to the appellee Mary Pratt are substantially to the same effect. It appears that she also is sixty-five years of age and that she lives with her husband in Milford, Illinois; that she has worked for the Milford Canning Company during the corn and asparagus packs for twenty-seven years; that she had no other industrial experience; and that in the off season she occasionally did laundry and housecleaning for others. She stated that after the factory closed in September, 1948, she had tried to find work at several stores in Milford, and had applied at an industrial plant in Watseka which hired women.

At each hearing the board of review called as its own witness one Darrel Nelson, an employee of the Division of Unemployment Compensation with offices in Kankakee, who professed knowledge of the labor market in the Milford area. He testified that there were no calls for labor in Milford outside those for two seasonal industries, *viz.*, the cannery and a hybrid seed company, and that the town did not offer suitable work prospects during the off season of these industries. He related that Milford is located between Hoopeston and Watseka, both of which were considered to be labor markets because of the industries there, and both of which, he concluded, would be the practical labor market for residents in and near Milford. He admitted that there was no satisfactory means of public transportation from Milford to either city, and that Milford people who do work in these places must use private transportation. Neither of the appellees, it appears, had means of transportation.

On the records thus made, the board of review denied benefits to appellees, with a finding that appellees were not "available for work" within the meaning of section 6(c) of the Unemployment Compensation Act. (Ill. Rev. Stat. 1949, chap. 48, par. 222.) The section reads as follows: "Section 6. Eligibility for benefits. An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that: * * * (c) He is able to work, and is available for work; provided that during the period in question he was actively seeking·work."

The phrase "available for work" is nowhere defined in the act, nor have we been previously asked to construe or interpret it. It appears, however, that the phrase is used in the unemployment compensation laws in all fifty-one American jurisdictions, and has been the subject of litigation and scholarly discussion in many of them. Appellants urge that we adopt the standards and criteria of these

neighboring jurisdictions in construing our own act and in applying it to the facts of the appeals before us. Appellees have filed no written briefs and thus we do not have the advantage of their argument against the positions taken by the appellants.

It is said that the phrase "available for work" is designed to test the current labor-force attachment of the claimant for unemployment compensation. The thought is that if the individual is to be compensated for wage loss or loss of income under a compulsory unemployment insurance system, then there must be assurance that he is available for work and that he is ready to accept employment. The requirement that a claimant, in order to be eligible for unemployment compensation benefits, shall have earned a specified amount of wages during a designated period, (section 6(c),) is one of the eligibility requirements that tests the individual's past status as a worker and indicates that he has earned wages. The requirement that he be available for work is designed to test the individual's continued and current attachment to the labor force. *Dwyer* v. *Appeal Board,* 321 Mich. 178, 32 N.W. 2d 434; 55 Yale Law Journal, pp. 123-124; Altman, Availability for Work, Harvard University Press, 1950, p. 2.

An examination of the many cases cited from other jurisdictions leads to the conclusion that no hard-and-fast rule as to what constitutes availability for work can be adopted; that availability depends in part on the facts and circumstances in each case, and that in general the availability requirement of the statutes is satisfied where a worker is ready and willing to accept suitable work at a point where there is an available labor market, which work he does not have good cause to refuse. (*Leonard* v. *Board of Review,* 148 Ohio, 419, 75 N.E. 2d 567; *Kontner* v. *Board of Review,* 148 Ohio, 614, 76 N.E. 2d 611; *Boyer* v. *Board of Review,* 4 N.J.S. 143, 66 Atl. 2d 543; *Hunter* v. *Miller,*

148 Neb. 402, 27 N.W. 2d 638; *Shellhammer* v. *Board of Review,* 162 Pa. Super. 327, 57 Atl. 2d 439; *Dwyer* v. *Appeal Board,* 321 Mich. 178, 32 N.W. 2d. 434.) The last-cited case describes the test of availability as being subjective in nature, stating that, "Whether or not a claimant is in fact available for work depends to a great extent upon his mental attitude, *i.e.,* whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out." We agree with the decisions, in which the question has arisen, that registration with the State employment service and an expressed willingness to accept work does not of itself establish availability for work, for section 6 of our act clearly provides that registration for work is but one of the required findings before a claimant is entitled to benefits. He must be able to work and also available for work.

None of the cases cited by appellants are similar in their facts to those presented in this appeal. In many of them the claimants deemed ineligible for benefits had placed restrictions on their employability for personal reasons, *i.e.,* they refused to work on night shifts, or to be transferred to other types of employment for which they were suited. In some instances there was little or no effort to secure work after steady employment had been terminated, and in other cases the claimants had removed themselves from areas where there was a labor market to areas where none existed. In the present case neither appellee has expressly placed any restrictions on her employability, nor have they detached themselves from a labor market by removing to another locality, but, by their own testimony, they are detached from it not only because there are no labor opportunities where they reside, but in addition there are no

transportation facilities to a place of employment where opportunities exist. Being thus detached, neither claimant can be said to be available within the requirement of section 6(c) of the Unemployment Compensation Act.

Our examination of the record in contests concerning availability, as in other cases where findings of fact are made by an administrative agency, must ordinarily be limited to the determination of whether the agency's findings of fact are sustained by the evidence. We will not disturb the findings of fact made by an administrative agency unless they are manifestly against the weight of the evidence, or unless there is no substantial evidence to support them. (*Drezner* v. *Civil Service Com.* 398 Ill. 219.) It is not within the province of this court to substitute its judgment for that of an agency such as herein appealed from, unless we can say that the findings of the agency are clearly and manifestly against the weight of the evidence. (*Oil Workers Union* v. *Gordon*, 406 Ill. 145; *Outboard, Marine & Mfg. Co.* v. *Gordon*, 403 Ill. 523; *Local No. 658* v. *Brown Shoe Co.* 403 Ill. 484.) When one considers the entire pattern of the evidence in the records before us, the findings of the board that appellees were not available for work are not contrary to the manifest weight of the evidence. Both women resided for twenty-seven years in communities that presented no labor market outside seasonal work, and offered no transportation facilities to other available labor markets. It is apparent that neither claimant sought additional work outside or within their communities until this litigation was commenced, and even then the evidence is meager that either fully or adequately canvassed the labor markets to which they did have access. The habit, born over a long period of years, of working only seasonally is indicative of a mental attitude of contentment to remain out of the labor market during the off season of the canning industry. Under such circumstances, it cannot be said that either appellee was currently attached to the labor

market, and available for work within the requirement of our Unemployment Compensation Act.

Appellants do not contend, nor do we hold, that a seasonal worker is *per se* ineligible for benefits during the off season of her customary occupation. As previously pointed out, availability must depend in part on the facts and circumstances of each case. Section 8 of our Unemployment Compensation Act, originally enacted in 1937, (Ill. Rev. Stat. 1937, chap. 48, par. 224,) which embraced the problem of benefits for those seasonally and irregularly employed, was repealed by the legislature in 1939, (Ill. Rev. Stat. 1939, chap. 48, par. 224,) thus manifesting a legislative intent that seasonal workers, to be entitled to benefits, must meet the same eligibility requirements as other claimants, one of which is that he be available for work.

While, at first glance, the denial of benefits to appellees may seem contrary to the spirit of the act, it should be noted that the declaration of public policy contained in section 1 of the Unemployment Compensation Act (Ill. Rev. Stat. 1949, chap. 48, par. 217,) is that the act seeks to protect against economic insecurity due to involuntary unemployment. Thus, the act is intended to provide benefits for those who are unemployed through no fault of their own, who are willing, anxious and ready to obtain employment so that they may support themselves and their families. Such persons must, of course, be genuinely attached to the labor market. Though we realize as individuals that the expressed Utopian purpose is not always the result accomplished in the administration of the act, and that many undeserving parties benefit while deserving parties do not or may not, this public purpose must be kept in mind when courts are called upon to construe the act. The history of appellees' labor experience shows that their unemployment in the off season of the cannery, while not occasioned through any fault of their own, was the result of their own voluntary choice to remain detached from the labor market.

The minor efforts to secure other employment, and which were made after this controversy had arisen, cannot be said to have altered their status.

For the reasons stated, we are of the opinion that the orders of the circuit court of Iroquois County, which found appellees entitled to unemployment compensation benefits, must be reversed. *Orders reversed.*