104 So.2d 612 (1958)
A.L. TEAGUE, Petitioner,
v.
FLORIDA INDUSTRIAL COMMISSION, Respondent.
No. 564.
District Court of Appeal of Florida. Second District.
July 30, 1958.
*613 Connor & Hanlon, Winter Haven, for petitioner.
Burnis T. Coleman and Robert B. Kane, Tallahassee, for respondent.
KANNER, Chief Judge.
The petitioner claimant initiated his claim for unemployment compensation benefits with the claims examiner in Jackson, Tennessee, and after rejection of the claim had his file transferred to the Winter Haven, Florida, employment office for hearing before the appeals referee. The chief appeals referee also denied petitioner's claim. Both the appeals referee and the claims examiner determined that petitioner was ineligible for unemployment compensation benefits under the Florida Unemployment Compensation law for the reason that he was not "available for work". Chapter 443, Florida Statutes, F.S.A. The board of review denied petitioner's application for leave to appeal from the decision of the appeals referee and such denial order adopted the decision of appeals referee as the decision of the board. Judicial review is now sought in this court. See section 443.07(4), Appeals, part (e).
The history of petitioner's work background reveals that he has spent most of his life in Tennessee, the state of his birth, and that he is thirty-four years of age. His employment began in Tennessee as a farmer-sharecropper and he pursued this occupation for ten years, the longest work tenure in his history. After relinquishing this work, he worked for about one year as a helper to a "concrete man" in bridge construction and was employed for about eleven months at a shoe factory finishing leather. In 1955, he left Tennessee for Dundee, Florida, where he procured year-around work at the Glen St. Mary plant nursery. After seven weeks he left this *614 year-around job for seasonal employment in a Dundee citrus packing plant, leaving that job after seven or eight months but before the plant closed and going to a Lake Hamilton citrus packing plant until the season there ended in June, 1956. He then returned to Tennessee for a period of three months, where he did not procure work. On September 1, 1956, he resumed his employment at the Lake Hamilton citrus plant until the end of the season, June 5, 1957, and then went back to Tennessee for two months. There, again, he did not procure work. He returned to Florida on July 29, 1957, and again engaged in his seasonal work beginning in September, 1957, in the Lake Hamilton citrus plant. Between the time of his return and the commencement of work with the citrus plant he did not obtain any work. The question of eligibility is for the period from June 23, 1957, to September 17, 1957.
The query before this court as the sole point on appeal is whether there is any competent substantial evidence that supports the determination that petitioner as claimant was not "available for work".
The Florida act contains certain essential prerequisites that must be fulfilled before an unemployed individual shall be eligible to receive compensation benefits. The one involved here reads, referring to a claimant, "* * * He is able to work and is available for work". There is no dispute here as to the claimant's ability to work, so the determination of the entire case hinges on the term "is available for work". Section 443.05(3), Florida Statutes. The term "available for work" seems to be utilized in practically all the other state jurisdictions that have an unemployment compensation law. In many of the acts there is added the proviso to the term "available for work", as it concerns an unemployed individual's eligibility to receive benefits, that he must be "actively seeking work". Although the Florida law contains no such proviso, by administrative policy and judicial construction Florida has aligned herself with these other states by placing this same basic construction on the term "available for work", that is, the unemployed individual must actively look for work.
The only Florida case, yet a most through one, interpreting the meaning of "availability for work" is Florida Industrial Commission v. Ciarlante, Fla. 1955, 84 So.2d 1. There it was held the term "available for work" means not merely that a claimant register for employment with an expressed willingness to work, but also that he actively seek work.
From the record and testimony, certain enlightening statements were proffered by the petitioner. On July 15, 1957, the commission received Tennessee Form 1B-11, summary of insurance interview, in which petitioner stated that after being laid off by the Lake Hamilton Cooperative and after returning to Hornsby, Tennessee, he had "checked a couple of sawmills" and further stated, "I do not farm". Petitioner also stated that he did not seek work the week ending July 6, 1956, and that he just "stayed around home". He testified as to his work record before the appeals referee that having worked on a farm for about ten years, he "took a notion to leave it"; that after leaving he did bridge construction work for about a year, went to Florida and worked on a year-around job in a plant nursery for about seven weeks and then quit because he "just didn't like it, for one thing" and because he made more money in his subsequent employment; and that he was aware when he left this year-around job that the citrus work was seasonal.
He testified further that he next worked for the Dundee citrus groves for seven or eight months, 1955-56, quitting before the end of the season to go to Lake Hamilton, then to Tennessee where he spent three months unemployed; that he had not tried to find grove work in Florida after the close of the 1955-56 citrus packing season because "I just didn't feel I could get on * * *"; further that he did not try to find grove work in Florida before returning to Tennessee the following summer, 1957, *615 because "I just didn't try"; that he went back to Tennessee for the summer of 1957 knowing that the farm gathering season had ended, because "I thought maybe I might go up north somewheres" but that he heard they were "shutting down up there"; that in the weekly unemployment forms he filed in Tennessee he had stated that he was trying to find work but "they didn't have no work to offer me. Besides farming". He also testified that during the week ending June 29, 1957, while in Tennessee he sought work at two sawmills; that he also sought work with a third sawmill operator; and that after returning to this state and during the six weeks' period before he returned to work, he sought work only with one contractor, at one packing house, and "asked the other boys" there.
It is thus clear that in the summer of 1957, during his two months' period in Tennessee, he punctuated his stay there by making a total of three inquiries during two weeks' time and no inquiries during the other six weeks spent in that state and that in Florida he made only the inquiries previously referred to of two different organizations during a six weeks' period.
There is no rigid rule as to what constitutes availability for work, but rather availability depends on the factual situation in each case. The purpose of the availability prerequisite is to test the mental attitude of the unemployed individual as to the sincerity of his desire to procure work and the genuineness of his attachment to the labor market. Where one is a seasonal worker, he must during his offseason meet the same eligibility requirements as a non-seasonal worker. He must be ready and willing to accept other suitable employment which he has no good reason to reject where a labor market exists. In the event he does not succeed in finding a job in his accustomed work category, he must seek other suitable work which he is capable of doing. Under the requirements for eligibility to receive benefits, he cannot sit idly by and wait for work to be offered to him, but the approach must be active and not passive with reference to his search for employment. See 81 C.J.S., Social Security and Public Welfare, § 197, pp. 291, 292, and section 203, pp. 301-304; Florida Industrial Commission v. Ciarlante, Fla. 1955, 84 So.2d 1; and Mohler v. Department of Labor, 1951, 409 Ill. 79, 97 N.E.2d 762, 24 A.L.R.2d 1393. There is no requirement that a claimant shall be available for work in any particular place. The mere fact that he has moved from one locality to another does not furnish a basis for holding him unavailable for work. However, the right to compensation benefits is temporarily lost or suspended where he voluntarily takes himself to another community in which there is no employment available and no reasonable expectation of finding any. 81 C.J.S., Social Security and Public Welfare, § 207, p. 306.
There are many cases that have dealt with the sufficiency of effort to secure work. It is enough to refer to the Florida and Illinois cases heretofore cited and to a New Jersey case.
In Florida Industrial Commission v. Ciarlante, the claimant, a custom tailor who engaged in seasonal work for four or five months during the winter, was always laid off during the summer. She was discharged by her last employer and then registered for employment as a custom tailor, checked the daily newspapers for advertisements for such work, and made personal calls on three separate days on similar establishments in the area, but ceased these efforts because she said she knew there was "nothing to do" in her line of work during the summer. The appeals referee denied the claim on the basis that claimant was not available for work. The board of review upheld the appeals referee's denial of compensation; the claimant sought review in the circuit court, which reversed the board's order; appeal was taken to the Supreme Court by the industrial commission; and the Supreme Court reversed the decision of the circuit court, upholding the decision that the claimant was not available for the work and *616 therefore not eligible for benefits under the unemployment compensation act.
An impressive case of another jurisdiction on the same subject is an Illinois case, that of Mohler v. Department of Labor. The claimants were seasonal workers who resided in communities that presented no labor market for them outside of the seasonal work and offered no transportation facilities to other labor markets. Such workers made minor efforts to procure other employment. One in September sought work at restaurants in two communities but made no other effort to secure employment that year, and in December the following year applied for work at two stores in another community but made no application to industries of that city where women were employed. The other tried to find work at several stores and applied at an industrial plant which hired women. The board of review found them ineligible for benefits, holding that they were not available for work. The circuit court reversed the board's decision; appeal was taken; and the Supreme Court of Illinois upheld the board's decision that the claimants were not available for work within the purview of the compensation act and reversed the orders of the circuit court.
Although the facts of these cases are different in some respects from those of the instant case, yet the pattern or design is quite similar. The claimants made only meager efforts to obtain work during offseason. They followed this pattern each year, so the result was that they worked during the season and did no work during the off-season.
There is also the New Jersey case of Guidice v. Board of Review of Division of Employment Security, 1951, 14 N.J. Super. 335, 82 A.2d 206, 207, where the claimant was denied compensation because of his unavailability for work. The court in that case laid down the proposition that appellant was not entitled to unemployment benefits unless he had been and continued to be "actively seeking work" and that just registering with a state employment service and asking relatives and friends if they knew of any opportunities for work were not enough, nor was the reading of want ads and telephoning a few places. The appellate court sustained the ruling rejecting his claim.
The burden is on the claimant to prove by substantial competent evidence that he has met the requirements for eligibility specified by the act, including the essential requirement, as construed, of availability for work. The findings of the appeals referee and the ruling of the board upholding the appeals referee's decision will not be disturbed unless they are manifestly against the weight of the evidence or unless there is no substantial evidence to support them.
The petitioner's own narrative adequately portrays the desultory fashion in which he exposed himself to the labor market while fitting himself into what appears to be a comfortable design for living, of work in Florida during the packing season and summer visits back to his former home community in Tennessee, where as he was palpably aware, the gathering season for farm work had been terminated and where no employment by him was to be had. No one should be denied a meritorious claim for unemployment benefits. Neither should the purpose of the act be perverted, at the expense of others who are compelled to contribute to the fund, with the bizarre result of paying benefits derived from it to persons who are voluntarily idle or indolent and who indicate no sincere desire to work. It is well, then, that the act contains suitable provisions against such an interpretation.
Since the realization of a Utopian dream cannot be expected, then content must this court be to uphold those claims that meet the requirements of the statute and reject those that do not. Unfortunately, the instant one falls in the latter category.
Petition denied.
ALLEN and SHANNON, JJ., concur.