DR. PAYMING LEU, Petitioner-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Respondents-Appellees.

First District (1st Division)    No. 79-1046

Opinion filed September 8, 1980.

George L. Grumley and Andrew L. Spivack, both of Spivack & Lasky, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner-appellant, Dr. Payming Leu, was granted a license in 1970 to practice medicine in the State of Illinois. In 1974, petitioner was convicted in Federal court of 19 counts of improperly dispensing controlled substances and sentenced to 5 years' imprisonment. On or about May 13, 1975, while petitioner was serving his sentence, the Department of Registration and Education (hereinafter the Department), revoked his medical license based on the fact that he had been convicted of a felony. Ill. Rev. Stat. 1977, ch. 111, par. 4433(2).

Petitioner was paroled from prison in February 1976 and opened two coin-operated laundromats. In July 1977, petitioner filed his petition with the Department seeking the restoration of his license. The Illinois State Medical Disciplinary Board (Ill. Rev. Stat. 1977, ch. 111, par. 4435) (hereinafter the Board) held a hearing on November 16, 1977, on petitioner's petition and made a finding of fact on March 29, 1978:

> "THAT testimony given by the Petitioner and other evidence introduced in this matter indicate that the physician's license of Payming Leu, previously revoked, should not be restored to him as he failed to demonstrate that he was competent to practice as a physician."

The Board recommended to the Director of the Department that petitioner's license not be restored "until the petitioner takes the Flex examination in its entirety and successfully passes same." Petitioner filed a petition for a rehearing and said rehearing was denied. Thereafter, the instant action was brought pursuant to the Administrative Review Act for a judicial review of the final administrative decision. The action of the Department was affirmed by the trial court and this appeal followed.

On appeal, petitioner-appellant has raised the following issues for review:

(1) Whether the findings of the Medical Disciplinary Board and the trial court are contrary to the manifest weight of the evidence;

(2) Whether the Director of the Illinois Department of Registration and Education exceeded the statutory authority by requiring petitioner to retake and repass the Flex medical examination as a condition to the return of his medical license;

(3) Whether section 17.07 of the Medical Practice Act (Ill. Rev. Stat. 1977, ch. 111, par. 4446) is void as an unlawful delegation of legislative power;

(4) Whether the competency hearing resulted in a total denial of due process to petitioner;

(5) Whether the Director's decision is contrary to the legislative requirements of section 5—5—5(a), (d) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—5(a), (d)).

At the administrative hearing before the Board the evidence disclosed that petitioner had graduated from the Chinese Medical School, in Shanghai, China, in 1949, and had practiced medicine until he came to the United States in 1956. In 1969 petitioner passed the Flex medical examination and on January 30, 1970, received his Illinois license. Petitioner worked at Provident Hospital in Chicago from 1970 to 1973, and in 1973, began a part-time private practice. Prior to the revocation of his license in 1975, petitioner claimed to have had some 26 years in the field of medicine, including five years in Illinois since 1970.

Petitioner was released from prison in 1976, and rather than seek his immediate return to the practice of medicine, opened two coin-operated laundromats. In July 1977, more than three years since the time he had last practiced medicine, petitioner filed his petition seeking the restoration of his license. During this time, petitioner gave the following responses at the hearing as to his training and education since 1976:

"Q. Dr. Leu, since the time of February of '76, to the present time, you have not taken any medical courses or refresher courses?

A. No.

Q. Are you a specialist—were you a specialist prior to your revocation?

A. I had a training in pediatrics and also had training in general practice.

Q. General practice?

A. Yes.

Q. And some speciality in pediatrics?

A. Yes.

Q. Not internal medicine, as an internist?

A. Internal medicine is included in general practice and in the internship.

Q. And you have done nothing to keep up with the current medical progress since you returned—since you left prison in '76?

A. No.

MR. FINE: I have no further questions of the Doctor, Mr. Goodman.

MR. GOODMAN: May I just ask him a question?

MR. FINE: Sure.

MR. GOODMAN: Doctor, is it a fact that you have not taken any courses and not taken any refresher courses because this Board revoked your license or took your license away and told you not to practice medicine?

CHIEF HEARING OFFICER WILLIAMS: Counsel?

MR. GOODMAN: Yes?

CHIEF HEARING OFFICER WILLIAMS: I think one can take courses in medicine. I mean I don't think there is any restriction and this Board cannot make that a restriction.

MR. FINE: May I just ask one question?

Dr. Leu, didn't you anticipate, after your revocation, that at some point you were going to ask the Board or petition the Board for reinstatement of your license?

THE WITNESS: Yes.

MR. FINE: Did you anticipate that?

THE WITNESS: I did anticipate it, but—

MR. FINE: And yet you still did not take any of the continuing education courses?

THE WITNESS: I didn't take it but I can make it up, catch it up, very soon."

The above evidence relating to the absence from the practice of medicine established that there was a factual basis for the Board and the court's finding that there was a legitimate question concerning petitioner's medical qualifications. The court addressed this concern by stating that "the taking of the Flex examination is just one of those detailed and comprehensive tools available to the Director to ascertain the qualifications of applicants * * * Dr. Leu legitimately to my mind raises a question as to his continuing medical qualifications. The legitimate question can be answered successfully by passing the Flex examination. The Director nor society should be left to guess as to whether or not the doctor has the necessary qualifications 20 months after he ceased practice. * * * This sensitive requirement that the Doctor satisfy the Flex examination

anew to show his continuing competence and his continuing qualification is a reasonable discharge of the important responsibilities of the Director in this regard."[1]

In reaching the above decision the trial court considered the issue of whether the decision of the Board was contrary to the manifest weight of the evidence. The court concluded that said decision was proper and was not contrary to the manifest weight of the evidence and affirmed the final determination that the Board had met its burden in reaching its decision.

It is a well-settled rule that the findings of an administrative agency are prima facie correct, and if there is substantive evidence to support an agency's decision, the decision must be affirmed. (*Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151; *Mohler v. Department of Labor* (1951), 409 Ill. 79, 97 N.E.2d 762.) We believe as did the trial court, that the Board was not required to restore the license without an examination and that the evidence supports the Board's decision.

The petitioner argues that the Director of the Department exceeded the statutory authority by requiring petitioner to retake and repass the Flex medical examination. Petitioner claims that the petition was one filed pursuant to the Medical Practice Act (Ill. Rev. Stat. 1977, ch. 111, par. 4446), which provides as follows:

"At any time after the suspension, revocation, placing on probationary status, or taking disciplinary action with regard to any license or certificate, the Department may restore it to the accused person, or take any other action to reinstate the license to good standing, without examination, upon the written recommendation of the Board."

Petitioner also claims that the revocation of his license proceeded pursuant to section 16(2) (Ill. Rev. Stat. 1977, ch. 111, par. 4433(2)), and this section provides as follows:

"The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license, certificate or state hospital permit of any person issued under this Act or under any other Act in this State to practice medicine, to practice the treatment of human ailments in any manner or to practice midwifery, or may refuse to grant a license, certificate or state hospital permit under this Act or may grant a license, certificate or State hospital permit on a probationary status subject to the limitations of the probation, and may cause any license or certificate which has been the subject

---

[1] The court erred in computation of months from practice of medicine. It should have been approximately 38 months as computed from the date of conviction to date of filing of petition for restoration.

of formal disciplinary procedure to be marked accordingly on the records of any county clerk upon any of the following grounds:

\* \* \*

2. Conviction in this or another State of any crime which is a felony under the laws of this State or conviction of a felony in a federal court, unless such person demonstrates to the Department that he has been sufficiently rehabilitated to warrant the public trust."

Petitioner argues that either there is no standard whatsoever upon which to base a decision in section 17.07 of the correct standard is the one found in section 16(2) relating to the showing of sufficient rehabilitation. Further, there was never any claim or charge made during the revocation proceeding that petitioner was not a professionally competent practitioner of medicine. Petitioner states that:

"Implicit in the Department's decision that Petitioner may practice medicine if he successfully passes the FLEX Medical Examination is that Petitioner is sufficiently rehabilitated to warrant the public trust because if he took and passed the test again he would be permitted to receive his license. If the Department of Registration and Education thought that Petitioner was not sufficiently rehabilitated, Petitioner would not be permitted to regain his license upon the successful completion of the FLEX Medical Examination. Petitioner has in fact been sufficiently rehabilitated to warrant the public trust, and is entitled to have his medical license restored."

The defendants argue that petitioner mistakenly refers to section 16(2), dealing with revocations, suspensions and probation as distinguished from section 17.07, dealing with restoration or reinstatement, and that a person seeking restoration of a medical license has no greater rights than those of a person seeking an original license. The very purpose of licensing is to insure professional competency for the protection of the public. Petitioner offered the testimony of Dr. Andriano Durango in support of his petition at the hearing, and Dr. Durango testified that he worked with petitioner for approximately seven months in 1969 but had no professional contact with petitioner from 1969 to 1974. This testimony, along with the testimony of petitioner, was the only evidence offered by petitioner in support of petitioner's professional competency.

Defendants also argue that the legislature was not obligated to impose the same or similar standards of section 16(2) into section 17.07, and the absence of the same or similar standards does not deprive petitioner of any constitutional rights. Defendants further maintain that petitioner's argument pertaining to the two sections of the act was previously raised in a revocation proceeding in *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968, 361 N.E.2d 626, and rejected and

that the Board in the instant case was not required to make a specific finding or ruling on the question of rehabilitation under section 17.07, as such a finding was not required by said paragraph.

■■■ We do not agree with the contention of petitioner on the issue of rehabilitation and we do not find the reasoning of petitioner to be persuasive that there is no standard in section 17.07 to apply to the restoration of a license and that the Board's action was arbitrary and capricious and not supported by the evidence. The finding that petitioner's license was not to be restored until the petitioner retakes the Flex medical examination, after having been licensed for a short period of time to the time of revocation, and a total failure to pursue any action relating to continuing medical education, was not against the manifest weight of the evidence. In an appeal from such an administrative determination, the reviewing court is required to affirm *Mohlor v. Department of Labor; Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 394 N.E.2d 770.

Petitioner next contends that section 17.07 is void and unconstitutional as an unlawful delegation of legislative power. Again petitioner has argued that section 16(2) must be employed when considering a petition brought pursuant to section 17.07. We disagree.

Petitioner does not question that the legislature could properly set standards for the Department, but claims that the absence of the type of standard in section 16(2) invalidates section 17.07. It is clear that the General Assembly cannot delegate its general legislative power to determine what the law shall be as to the restoration of a medical license; however, it may authorize others, such as the Department, to do those things which it might properly do, including the power to implement the statute, but cannot do understandingly or advantageously itself. (*Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 363 N.E.2d 814; *Board of Education v. Page* (1965), 33 Ill. 2d 372, 211 N.E.2d 361.) The preciseness of the standards employed or required to be set depends on the complexity of the subject matter and the ultimate objective of the act in question. (See *Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 317 N.E.2d 534.) The very nature of the objective to be achieved, the overriding public interest in seeing that only qualified persons are licensed to practice medicine in Illinois, and the problems to be solved, may have negated the usefulness of setting more particular standards by the legislature. *Stojanoff v. Department of Registration & Education* (1980), 79 Ill. 2d 288, 403 N.E.2d 255; *Board of Education v. Page*.

■■ Here, the legislature may have decided that the technical complexity and diversity of problems and the degree of detail involved in ascertaining at what point in time and the conditions upon which a medical license may be restored after suspension or revocation could be better resolved by the Department and left to its judgment and administrative discretion

so long as its findings are not against the manifest weight of the evidence and subject to judicial review. The administrative discretion granted to the defendant in section 17.07 of the Act, even though an admittedly flexible standard, does not improperly delegate legislative authority as claimed by petitioner. *Hoogasian v. Regional Transportation Authority; People ex rel. Daesch v. Mayor of City of Belleville* (1961), 22 Ill. 2d 226, 194 N.E.2d 678; *Kenilworth Insurance Co. v. Mauck* (1977), 50 Ill. App. 3d 823, 365 N.E.2d 1051.

■■ In the case at bar petitioner received a medical license on January 30, 1970, and such license was revoked on May 13, 1975, and the finding and conclusion of the Board was rendered on May 29, 1978. The language of section 17.07 plainly indicates that the legislature intended to grant to the Board the discretion to recommend approval or disapproval of a petition for restoration based upon evidence presented at a hearing. One purpose of the hearing before the Board is to maintain sound, professional standards of conduct for the purpose of protecting the public and the standing of the medical profession in the eyes of the public. (*Kaplan v. Department of Registration & Education.*) We are not prepared to hold that in view of the short duration of petitioner's medical license in Illinois prior to revocation that the finding and conclusions of the Board were not within the scope of the Act and did not represent an unauthorized delegation of legislative authority. The Board has exercised its judgment and discretion in the instant case and said Board is not, as plaintiff assumes, required to render ministerial approval of a petition for restoration, once an application in proper form has been made. See *Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 365 N.E.2d 667.

■■ Petitioner also contends that the failure to inform him that he was not professionally competent to practice medicine deprived him of an opportunity to prepare his case to rebut that allegation and deprived him of due process. We disagree. Petitioner has not produced any evidence or cited any specific instance where he was prevented from presenting his case before the Board. Petitioner was seeking relief pursuant to his petition and admittedly had not pursued any medical education courses since the revocation in 1975, and it was not unreasonable or unexpected to establish or demonstrate his continued medical competence to the Board. (See *Kaplan v. Department of Registration & Education.*) Petitioner produced one witness, Dr. Durango, in support of his petition and has not alleged or claimed any specific instance where his efforts to present additional evidence in support of the allegations in his petition were improperly curtailed, hampered or restricted in any manner whatsoever. Petitioner invoked these proceedings by filing his petition to restore his medical license and alleged in said petition that he possessed all the skills of a physician and that the restoration of his license would benefit the People of the State of Illinois. Petitioner was not charged with any offense or

violation of the Medical Practice Act in these proceedings and petitioner's failure, if any, to present any matter in support of his petition cannot be imputed to the Board. As previously indicated, one of the purposes of the hearing was to ascertain petitioner's qualifications to practice medicine in the State of Illinois. (See *Torriente v. Stackler* (7th Cir. 1976), 529 F.2d 498.) Petitioner testified that the last time he practiced medicine was in May 1974 and he had not taken any post-graduate courses or done anything to maintain his expertise in medicine. The only evidence presented by petitioner consisted of petitioner's testimony and the testimony of Dr. Durango. Petitioner failed to demonstrate to the satisfaction of the Department his professional competence, and petitioner's rights to due process were not violated.

Finally, petitioner argues that section 5—5—5(a), (d) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—5) requires the return of petitioner's medical license. This section provides as follows:

"(a) Conviction and disposition shall not entail the loss by the defendant of any civil rights, except under this Section.

\* \* \*

(d) On completion of sentence of imprisonment or on a petition of a person not sentenced to imprisonment, all license rights and privileges granted under the authority of this State which have been revoked or suspended because of conviction of an offense shall be restored unless the authority having jurisdiction of such license rights finds after investigation and hearing that restoration is not in the public interest."

In his brief, petitioner states that:

"While the standard set forth in Section 1005—5—5(d) is somewhat different than the standard set forth in the Medical Practice Act, the two are by no means mutually conflicting or contradictory. The record is unclear as to whether or not the Department conducted an exhaustive investigation of Dr. Leu. The record is clear however that there was no finding that it would be contrary to the public interest to restore Dr. Leu's license to him. The instant statute does not say 'except for doctors and lawyers.' Section 1005—5—5 does not require the State to 'automatically' restore a professional license. It does, however, require that those same licenses be restored if after investigation and hearing said restoration is not contrary to the public interest."

This section was considered in *Kaplan v. Dept. of Registration & Education* and found not to be applicable to Kaplan because he was seeking to prevent the revocation of his license. Petitioner has not cited any authority for his position urged here that upon the conviction of improperly dis-

pensing about 25 prescriptions per day of a controlled substance to addicts, the above section of the Unified Code of Corrections must be construed together with section 17.07 to grant the reissuance of a license upon the mere filing of a request.

■■ Petitioner has admitted in his brief that section 5—5—5(d) does not require the State to automatically restore a professional license (*People v. Rongetti* (1946), 395 Ill. 580, 70 N.E.2d 568), and it is worthy to note that in the *Kaplan* case the court indicated that the automatic restoration of a license without notice would seem to be against public policy. We will not speculate in the instant matter as to whether the administrative action by the Department has been completed or whether further action is necessary or contemplated if petitioner elects to retake the Flex examination as directed. Petitioner has not called to our attention in the record any ruling or consideration of this issue relating to section 5—5—5(d) by the Department or the trial court or a request for such a ruling, and we, therefore, need not and we expressly refrain from passing on this issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.

