PAUL E. SCOTT, Petitioner-Appellee, *v.* THE BOARD OF REVIEW, Illinois Department of Labor, *et al.*, Respondents-Appellants.

Fourth District   No. 4—83—0525

Opinion filed April 4, 1984.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellants.

Irvin L. Masching, of Gomien, Root & Masching, of Dwight, for appellee.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
Unemployment insurance.
The question: Can a corporate officer qualify for unemployment insurance benefits?
Yes—under these conditions.
We affirm.

Paul Scott brought this action seeking judicial review of the determination of the Board of Review of the Illinois Department of Labor (the Board) that he was ineligible for unemployment insurance benefits. The circuit court reversed the Board's decision—and properly so.

Scott is the corporate secretary for Scott Brothers Contractors, and he believes that he is a director. He is not remunerated as an officer, but receives wages only when he works as a laborer. Scott Brothers is in the general contracting business, which customarily experiences a slack period during the winter months. The business shut down in January of 1982, and Scott applied for unemployment insurance benefits. Between January 3 and March 13, 1982, Scott performed no work as a laborer or officer, and he received no wages.

A claims' adjudicator denied Scott's application for benefits solely because Scott had retained his position as corporate secretary. After an administrative hearing a referee, and later the Board, affirmed this decision. Scott filed a petition for judicial review, and the trial court reversed. The Board asserts that the court erred in holding that Scott was eligible for benefits.

The purpose of the Unemployment Insurance Act (the Act) is to protect against economic insecurity due to involuntary unemployment. (Ill. Rev. Stat. 1981, ch. 48, par. 300.) The Act is intended to benefit those who are unemployed through no fault of their own and who are willing, anxious, and ready to obtain employment. (*Mohler v. Department of Labor* (1951), 409 Ill. 79, 86, 97 N.E.2d 762, 765-66.) While the Act is to be liberally construed (*American Steel Foundries v. Gordon* (1949), 404 Ill. 174, 180, 88 N.E.2d 465, 468), its purpose will be perverted if its benefits are paid at the compulsory expense of others to persons who are not intended beneficiaries. *Fleiszig v. Board of Review* (1952), 412 Ill. 49, 54, 104 N.E.2d 818, 821.

In order to achieve its purpose, the Act sets up an insurance program. Employers are compelled to contribute with respect to wages payable for "employment." (Ill. Rev. Stat. 1981, ch. 48, par. 550.) "Employment" includes services an officer performs even if the officer is also a stockholder or director of the corporation. (Ill. Rev. Stat. 1981, ch. 48, par. 316.) Scott Brothers, therefore, was required to contribute to the program based upon the wages it paid Scott as a laborer.

■ An individual must meet two conditions to be eligible for benefits. Similar to any other insurance program, an individual is entitled to benefits only if contributions to the fund are made for him. An individual whose employer does not contribute cannot get benefits under the Act. (Ill. Rev. Stat. 1981, ch. 48, pars. 346, 420.) The individ-

ual must also be "unemployed." (Ill. Rev. Stat. 1981, ch. 48, par. 420.) An individual is "unemployed in any week with respect to which no wages are payable to him and during which he performs no services." Ill. Rev. Stat. 1981, ch. 48, par. 349.

The Board asserts that Scott is not an intended beneficiary of the Act. The Board reasons that because Scott is an officer of a closely held, family corporation, he has retained control over his employment. Thus, his unemployment cannot be involuntary. The Board, therefore, concludes that Scott is not an "unemployed individual." Under this interpretation, Scott can *never* be eligible for benefits, though the corporation is still compelled to contribute based upon his wages.

The issue, then, is whether the legislature intended to deny benefits to one whose wages are the subject of employer contributions.

The court, in *Garland v. Department of Labor* (1984), 121 Ill. App. 3d 562, recently addressed this same issue. In *Garland* the plaintiff applied for unemployment benefits after she was laid off by her employer corporation. She continued to hold corporate office, although she performed no services and received no wages. The Bureau of Employment Security denied her benefits because it concluded that as president of a closely held, family corporation, she controlled her employment status, and thus, her unemployment was voluntary. The court, however, noted that the Act establishes an *insurance program*, and *not* a tax. The court went on to state that unlike a tax, the benefits of an insurance program should be payable to all for whom contributions are made. (121 Ill. App. 3d 562, 564.) The court, therefore, held that the plaintiff was eligible for benefits because the corporation had contributed on her behalf.

The Board urges us to reject the *Garland* approach and to follow other jurisdictions which bar an officer of a closely held, family corporation from receiving benefits. (See, *e.g.*, *DeVivo v. Levine* (1976), 51 App. Div. 2d 619, 377 N.Y.S. 2d 309; *De Priest v. Unemployment Compensation Board of Review* (1961), 196 Pa. Super. 612, 177 A.2d 20.) The Board cites these cases as persuasive authority, but it chooses to ignore other jurisdictions which allow a person in Scott's position to be eligible for benefits. (See, *e.g.*, *Springer v. Daniels* (1981), 1 Ark. App. 103, 613 S.W.2d 121; *Rector v. Director of Department of Employment Security* (1978), 120 R.I. 802, 390 A.2d 370; *In re Archer* (1975), 133 Vt. 279, 336 A.2d 172; *Eytchison v. Employment Security Agency* (1956), 77 Idaho 448, 294 P.2d 593.) Instead the Board asserts that *Garland* was incorrect in assuming that those whose wages are used in calculating their employers' contributions are intended to benefit under the Act. The Board relies primarily on *Bag-*

*ley & Huntsberger, Inc. v. Employer Accounts Review Board* (1978), 34 Pa. Commw. 488, 383 A.2d 1299, which declared that no *quid pro quo* relationship between payment of the unemployment tax and entitlement to benefits exists in Pennsylvania.

While Pennsylvania appears to treat their contributions as taxes, Illinois does not. The Act sets up a system for unemployment insurance not for unemployment taxation. The Act provides "for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment." (Ill. Rev. Stat. 1981, ch. 48, par. 300.) We cannot ignore the legislature's recent amendment by Public Act 79—98, which substituted the word "insurance" for "compensation" in both the title of the Act and the declaration of public policy. Ill. Rev. Stat. 1981, ch. 48, pars. 300, 820.

▮ Contributions to an insurance program are paid for a guarantee that those for whom the contributions are made will be entitled to future benefits. Employers contribute now so that their employees will be protected against unemployment in the future. The legislature defined the class of individuals entitled to receive benefits in its definition of "employment." (*A. George Miller, Inc. v. Murphy* (1942), 379 Ill. 524, 527, 42 N.E.2d 78, 80.) The services which Scott provided are included in this definition. The involuntary contributions that employers make are not general taxes; rather, they are trust funds, and there is no statutory warrant for collecting more funds than is necessary to satisfy the possible future demands of the beneficiaries for whom contributions are currently being made. (*Lindley v. Murphy* (1944), 387 Ill. 506, 511, 56 N.E.2d 832, 835.) If an officer of a closely held, family corporation cannot receive benefits, then common sense would dictate that the employer corporation should not be compelled to contribute on his behalf.

The Board asserts that affirmance of the lower court would only encourage manipulation of closely held corporations so that officers could schedule a period of corporate inactivity and then apply for unemployment benefits. The *Garland* court acknowledged this potential for abuse, but held that the legislature must eliminate opportunities for manipulation. (*Garland v. Department of Labor* (1984), 121 Ill. App. 3d 562, 566.) Indeed, the legislature has previously eliminated such opportunities. For instance, service performed by an individual for his parent, child, or spouse has been exempted from the definition of "employment." (Ill. Rev. Stat. 1981, ch. 48, par. 328.) If the legislature had intended to remove officers of closely-held, family corporations from the ameliorative provisions of the Act, it undoubtedly would have employed language appropriate to accom-

plish its objective. (*Peasley v. Murphy* (1942), 381 Ill. 187, 192, 44 N.E.2d 876, 879.) We cannot exclude Scott from eligibility for benefits merely to prevent corporate manipulation when the legislature has chosen not to do so.

While the Board asserts that we must not ignore the reality of the situation, the Board itself exalts form over substance. Scott's unemployment stems from the seasonal nature of his work, not from anything he can control as corporate secretary. The Board complains that Scott chose to risk seasonal losses, yet the same is true for all seasonal workers. A seasonal worker is not *per se* ineligible for benefits; rather, he is subject to the same eligibility requirements as all other workers. (*Mohler v. Department of Labor* (1951), 409 Ill. 79, 86, 97 N.E.2d 762, 765.) Because we hold that Scott can be an "unemployed individual," those same eligibility requirements must be applied to him.

We accordingly affirm the judgment of the circuit court.

Affirmed.

TRAPP and MILLER, JJ., concur.