JAMES G. MIDDLETON, M. D., Plaintiff-Appellant, v. GARY L. CLAYTON, Director, Department of Registration and Education, Defendant-Appellee.

First District (2nd Division)   No. 84—244

Opinion filed November 7, 1984.

James G. Middleton, of Des Plaines, for appellant, *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Susan C. Weidel, Assistant Attorney General, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

James G. Middleton (petitioner) appeals from an order of the circuit court which affirmed the decision of the Department of Registration and Education (Department) denying petitioner's request for restoration of his license to practice medicine in Illinois.

The record discloses the following underlying facts: petitioner was first licensed to practice medicine in 1959 in the State of Missouri. In 1962 he was licensed in Georgia and in Tennessee. In 1963 he petitioned for licensure in Illinois based on reciprocity with Tennessee. He was licensed in Illinois, on that basis, in 1964.

In 1961 petitioner pleaded guilty to a charge of assault and battery in Ohio. In May 1962 petitioner's Missouri medical license was revoked "on the basis of unprofessional and dishonorable conduct." The Missouri Board of Registration found that petitioner had on two occasions administered certain drugs to a female patient which "rendered her powerless to resist" and then committed sexual acts upon her, without her consent.

In 1971 petitioner's Illinois medical license was revoked by the Department, premised on its findings that petitioner had committed acts which constituted "dishonorable, unethical or unprofessional conduct." The acts found to have been committed by petitioner were: (1) in the years 1968 through 1970, he had injected five different female patients with drugs, rendering them helpless to resist, and then taken sexual liberties with them, without their consent; (2) when applying for an Illinois medical license in 1963, petitioner had failed to advise Illinois authorities that his Missouri medical license had been previously revoked; and (3) when petitioner applied for medical licensure in Georgia in 1962 he was required to respond, under oath, to the question of whether he had ever been "charged or convicted" of a crime. Petitioner answered "no" when, in fact, he had previously pleaded guilty to the Ohio criminal charge, and had been charged in Missouri with the crime of rape by the use of drugs.

The record also demonstrates that petitioner, following his Illinois license revocation, was convicted of a single felony charge of deviate sexual assault in Illinois in 1972, and, in the same year, of a Federal felony charge of unlawful possession of firearms.

After serving his prison sentences, petitioner first applied to the Department for restoration of his Illinois medical license in April 1980. Petitioner, who was not then represented by counsel, was denied restoration. In October 1981 petitioner secured counsel, and reapplied for restoration. It is this second application which is involved in the present appeal.

At the administrative hearing before the Illinois State Medical Disciplinary Board (Board), petitioner presented the testimony of Dr. Bernard Shulman, chairman of the department of psychiatry at St. Joseph's Hospital in Chicago. He testified that he had examined petitioner for about an hour and one-half, and devoted several additional hours consulting with other doctors who had also examined petitioner, as well as reviewing background documents. In Dr. Shulman's opinion, there was no evidence that petitioner was suffering from any mental or emotional illness. He found no evidence to indicate that petitioner would have any greater trouble than any other practicing physician in avoiding the medical or psychiatric problems relating to the practice of medicine. Dr. Shulman felt it appropriate to restore petitioner's medical license.

On cross-examination, Dr. Shulman acknowledged he was not an "expert" in "cases of deviate sexual behavior."

Petitioner also presented the testimony of his wife and 10 friends, many of whom had been patients of petitioner. Based on their observations of petitioner over the past 12 years, they agreed that petitioner was rehabilitated and fit to practice medicine. Many of the witnesses stated that they would again consult petitioner should his medical license be restored.

Petitioner testified that since his release from prison in 1980 he has been active six days per week in continuing medical education, and had earned more than 1,900 hours of credit in such courses. He had attempted to work in medically related fields, but had been unable to do so due to his license revocation. He was "rehabilitated" due to his continuing "socialization" and medical education. He would, if required by the Department, agree to practice medicine in a controlled environment such as a group, rather than solo practice.

With regard to the Department's factual findings which led to his 1971 license revocation in Illinois, petitioner denied having abused any patients. He stated that he did not advise Illinois that his Missouri medical license had been previously revoked because he was not asked that specific question, but admitted he nonetheless should have informed Illinois of that fact. He denied the charges of sexual abuse on which the revocation of his Missouri license was based. He admitted pleading guilty to the Ohio criminal charge, but contended he was "basically" innocent. He denied his guilt of the Illinois deviate sexual assault charge. He admitted his guilt to the Federal weapons charge. When asked if he felt "remorse" for the victims of his offenses, petitioner stated that there were no victims "except my wife and myself." He said he felt remorse for the victims to the extent that their

personal problems prompted them to make untrue charges against him.

Petitioner told the Board that if he were allowed to resume the practice of medicine, he would not molest patients. He also contended that there is no basis for the theory that an individual's past conduct is determinative of his future conduct.

At the request of the Board, Dr. James Cavanaugh, director of the "Psychiatry in the Law" section of the department of psychiatry at Rush-Presbyterian–St. Luke's Medical Center in Chicago, examined petitioner. Dr. Cavanaugh testified he spent some seven hours interviewing petitioner and conducted several psychological and neurological tests of petitioner. If one accepts as true the allegations of petitioner's past misconduct, the likelihood of recidivism is "significant." Petitioner has no psychiatric, psychological or neurologic dysfunction.

It was Dr. Cavanaugh's opinion that the ability to predict "future dangerousness" is increased with a history of "prior dangerousness." Dr. Cavanaugh has treated 30 to 50 persons charged with deviate sexual behavior, and 80% to 90% of those had repeated such behavior prior to Cavanaugh's treatment.

While Dr. Cavanaugh found no major psychiatric problems afflicting petitioner, there were "suggestions" of "personality disorders." If petitioner did in fact commit the acts he denies, Dr. Cavanaugh would feel "quite comfortable in saying at a minimum there is a major sociopathic or personality disorder problem" and the likelihood of a recurrence of sexual abuse is great.

On June 15, 1983, the Board issued its decision. It found, *inter alia*, that petitioner "has not engaged in any form of psychiatric treatment"; that he "continues to deny any wrongdoing and expresses no contriteness" and that the Board "takes notice of the seriousness of the previous charges and accepts them as true." The Board concluded that "petitioner has failed to show sufficient evidence of rehabilitation" and recommended that the Department deny his petition for license restoration. On August 13, 1983, the Department's director issued his order, which adopted the findings, conclusions and recommendation of the Board and denied petitioner's application for license restoration.

Following denial of his motion for rehearing before the Board, plaintiff filed a *pro se* complaint for administrative review in the circuit court. He there alleged that the Department's standards for determining "rehabilitation" were impermissibly vague; that the Department erred in requiring that petitioner admit wrongdoing and express contriteness; and that the Board gave insufficient weight to petition-

er's witnesses and the evidence of petitioner's rehabilitation. Petitioner also filed with the court additional documents which, he contended, had not been considered by the Board.

The circuit court determined that the Department's decision was supported by the manifest weight of the evidence, and affirmed the decision denying restoration of petitioner's license to practice medicine.

On appeal, petitioner's *pro se* briefs appear to raise four issues: (1) whether the Board and trial court considered all of the evidence; (2) whether the trial court employed the correct standard of review; (3) whether the Board incorrectly required petitioner to admit, and express contriteness for, his past misconduct as a basis for restoration of his license; and (4) whether the standards governing restoration of medical licenses is impermissibly vague.[1]

■ Petitioner's contention that neither the Board nor the trial court considered all of the evidence which favored petitioner is based on his assertion that materials he had sent (apparently by mail) to the Board at some undisclosed time prior to the administrative hearing in this case were "censored" by the Board's attorney. The record is devoid of any factual evidence to sustain such a charge. Other than petitioner's repeated accusations that the Board was somehow prevented from viewing these documents, we find no evidence to indicate that any member of the Board, or Board employee, interfered with petitioner's presentation of evidence.

While the record is unclear, it appears that in the interval between denial of petitioner's first petition for restoration of licensure and his second application, he forwarded documents to the Board. After the administrative hearing in this case (wherein petitioner introduced hundreds of pages of documentary evidence which, for the most part, related to his continuing medical education), petitioner determined that not all of the documents he had intended be introduced had, in fact, been introduced. From this, petitioner concludes that the

---

[1]Plaintiff's *pro se* briefs are difficult to comprehend. His initial brief contains: 25 paragraphs of "Points and authorities" which are repetitive and confusing "issues"; 11 further "issues"; a one-paragraph "argument" and some 70 pages of "exhibits."

Taken with this case was the Department's motion to strike various "exhibits" contained in petitioner's brief. These exhibits purport to demonstrate that petitioner's convictions in the Illinois and Federal criminal trials were improper. We agree with the Department that these documents are not a proper part of the record since they were not introduced in the administrative hearing, and that the issue of defendant's guilt in those criminal proceedings is not subject to relitigation by the Department at administrative hearings. The Department's motion to strike is granted.

Board was at fault. We disagree. It is clearly petitioner's responsibility to make certain that documents he intends to introduce at hearing are, in fact, provided. Moreover, to the extent that the documents which he claims were "censored" by the Board are those which he filed with the trial court on administrative review (these include an "abbreviated resume of Dr. Middleton's education"; petitioner's "brief history of case and statement of facts"; and three letters recommending that petitioner's license be restored), we find that the gist of each of these statements was presented to the Board. We conclude that petitioner's allegation that the Board "censored," or in some manner was prevented from reviewing petitioner's evidence, is unfounded.

■ Petitioner next contends that the Department erred in requiring him, as a basis for restoration of his license to practice medicine, to "express contriteness" for his alleged past misconduct. This contention is based, apparently, on one of the Department's 26 findings of fact, to wit: "that the petitioner continues to deny any wrongdoing and expresses no contriteness." Petitioner cites *In re Wigoda* (1979), 77 Ill. 2d 154, 395 N.E.2d 571, for the proposition that restoration of a professional license may not be made contingent on the applicant's refusal to admit wrongdoing. In this regard, the *Wigoda* opinion cited with approval the following language from *In re Hiss* (1975), 368 Mass. 447, 333 N.E.2d 429:

> " '[We] refuse to disqualify a petitioner for reinstatement *solely* because he continues to protest his innocence of the crime for which he was convicted. Repentance or lack of repentance is evidence, like any other, to be considered in the evaluation of a petitioner's character and the likely repercussions of his requested reinstatement.' " *In re Wigoda* (1979), 77 Ill. 2d 154, 161.

In the instant case, we do not find that the Department required petitioner to admit wrongdoing or express contriteness as a condition for restoration of his license. Instead, consistent with *Wigoda*, the Department merely noted the fact of petitioner's assertion of innocence. We therefore reject petitioner's argument that the Department improperly required him to admit wrongdoing in order to have his license restored.

■ Petitioner argues that the Department's standards governing restoration of medical licenses are overly vague and imprecise. The authority of the State to strictly regulate the medical profession is well established.

> "The right and duty of the legislature to enact strict regulations concerning physicians has been well explained by this

court as follows:

> 'Society places itself in the hands of plaintiff's profession for protection of the life and health of the community. The practice of medicine, in addition to skill and knowledge, requires honesty and integrity of the highest degree. \*\*\* The state under its police powers has the duty of protecting society from those of the profession who are not qualified to be the recipients of this trust. \*\*\*.' " *Ming Kow Hah v. Stackler* (1978), 66 Ill. App. 3d 947, 955, 383 N.E.2d 1264.

Section 17.07 of the Illinois Medical Practice Act (Act) (Ill. Rev. Stat. 1981, ch. 111, par. 4446) addresses the authority of the Department to restore revoked or suspended medical licenses. It provides:

> "At any time after the suspension, revocation, placing on probationary status, or taking disciplinary action with regard to any license or certificate, the Department may restore it to the accused person, or take any other action to reinstate the license in good standing, without examination, upon written recommendation of the Board."

The contention petitioner here makes, *i.e.*, that section 17.07 of the Act is invalid because it is impermissibly vague, has been rejected previously by this court. In *Leu v. Department of Registration & Education* (1980), 88 Ill. App. 3d 255, 410 N.E.2d 467, the court rejected the argument that because section 16 of the Act lists some 26 specific grounds upon which a medical license may be revoked or suspended (Ill. Rev. Stat. 1981, ch. 111, par. 4433), it was therefore required that the same specificity be included in the section of the Act governing restoration of a medical license.

> "Petitioner does not question that the legislature could properly set standards for the Department, but claims that the absence of the type of standard in section [16] invalidates section 17.07. It is clear that the General Assembly cannot delegate its general legislative power to determine what the law shall be as to the restoration of a medical license; however, it may authorize others, such as the Department, to do those things which it might properly do, including the power to implement the statute, but cannot do understandingly or advantageously itself. [Citations.] The preciseness of the standards employed or required to be set depends on the complexity of the subject matter and the ultimate objective of the act in question. [Citation.] The very nature of the objective to be achieved, the overriding public interest in seeing that only qualified persons are licensed to practice medicine in Illinois, and the problems to be solved,

may have negated the usefulness of setting more particular standards by the legislature. [Citations.]

Here, the legislature may have decided that the technical complexity and diversity of problems and the degree of detail involved in ascertaining at what point in time and the conditions upon which a medical license may be restored after suspension or revocation could be better resolved by the Department and left to its judgment and administrative discretion so long as its findings are not against the manifest weight of the evidence and subject to judicial review. The administrative discretion granted to the defendant in section 17.07 of the Act, even though an admittedly flexible standard, does not improperly delegate legislative authority as claimed by petitioner. [Citations.]

\*\*\*. The language of section 17.07 plainly indicates that the legislature intended to grant to the Board the discretion to recommend approval or disapproval of a petition for restoration based upon evidence presented at a hearing. One purpose of the hearing before the Board is to maintain sound, professional standards of conduct for the purpose of protecting the public and the standing of the medical profession in the eyes of the public. [Citation.]" *Leu v. Department of Registration & Education* (1980), 88 Ill. App. 3d 255, 262-63, 410 N.E.2d 467.

We agree that the flexible standard governing restoration of medical licenses is permissible and proper.

■ Petitioner next contends that the trial court erred in that it allegedly employed an incorrect standard of review. He states "[t]he court erred in not finding legal impropriety below when the components of the [Department] made findings of fact that did not conform to the expert testimony, documents, reports and exhibits placed before it and directed to it that were without exception favorable and beneficial to Dr. Middleton."

The standard of review in an action for administrative review of an order of the Department relating to licensure is "limited to determining whether that conclusion was supported by substantial evidence, or was it contrary to the manifest weight of the evidence" (*Wedeberg v. Department of Registration & Education* (1968), 94 Ill. App. 3d 451, 456, 237 N.E.2d 557). It is also recognized that the court has a duty to examine the procedural methods employed at the administrative hearing, to insure that a fair and impartial procedure was used. See *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1974), 20 Ill. App. 3d 301, 314 N.E.2d 350.

In the present case the trial court, on the record, correctly noted its role and responsibility in administrative review cases. We find that the trial court employed the proper standard of review.

In light of the evidence presented to the Board, we cannot conclude that the Department's decision to deny restoration of petitioner's license to practice medicine is contrary to the manifest weight of the evidence. Nor do we find procedural error in the administrative hearing afforded petitioner.

For these reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.