MARVIN ZIPORYN, Plaintiff-Appellee, v. NIKKI M. ZOLLAR, Director, Department of Professional Regulation, *et al.*, Defendants-Appellants.

First District (6th Division)  No. 1—98—3042

Opinion filed December 30, 1999.

James E. Ryan, Attorney General, of Chicago (Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Charlotte Ziporyn, of Chicago, for appellee.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

In 1991, the Director of the Department of Professional Regulation ordered Marvin Ziporyn's medical license indefinitely suspended and his controlled substance license revoked. The Director also ordered Ziporyn to complete a course of study approved by the Department's medical coordinator and to pass a mental and physical examination prior to petitioning for restoration of his medical license. Ziporyn did not seek administrative review of the Director's decision and did not comply with the conditions attached to the suspension.

Ziporyn filed with the Director a petition for restoration of his medical license in 1996. He did not seek restoration of his controlled

substance license. After the Director denied the petition, Ziporyn filed a complaint for administrative review. The circuit court remanded the matter to the Director for reconsideration of the indefinite suspension of Ziporyn's medical license. On remand the Director ordered that Ziporyn's license remain indefinitely suspended. The circuit court reversed the Director's decision and ordered the Director to terminate the suspension of Ziporyn's license and reinstate the license.

We are presented with the following issues for review: (1) whether the circuit court improperly exercised jurisdiction over the case where Ziporyn conceded that he had not complied with the conditions attached to his suspension in seeking restoration of his license, and (2) whether the Department's refusal to restore Ziporyn's medical license is supported by the record.

The record shows that Ziporyn is a psychiatrist and has been licensed as a medical doctor since 1948. In September 1986, the Department (then known as the Illinois Department of Registration and Education) filed a complaint against Ziporyn, who then held an Illinois certificate of registration as a physician and surgeon and also a controlled substances license. The complaint alleged that between June 9, 1984, and February 11, 1986, Ziporyn prescribed for one of his patients over 1,036,500 milligrams of Demoral, a schedule II controlled substance, for the purpose of treating acute depression. Additionally, the complaint alleged that by so treating this patient, Ziporyn failed to exercise currently accepted standards of medical care, had prescribed a habit-forming controlled substance in a way other than for therapeutic purposes, and had dispensed controlled substances other than in "good faith" as that term is defined by the Illinois Controlled Substances Act (now 720 ILCS 570/102, 603 (West 1996)). The complaint sought suspension, revocation or other discipline of Ziporyn's medical license and controlled substance license.

On May 17, 1989, the Department's Medical Disciplinary Board (Medical Board or Board) issued its recommendation that Ziporyn's medical license be suspended indefinitely and that his controlled substances license be revoked. The Board also recommended that Ziporyn be required to complete a course of study approved by the Department's medical coordinator and pass a mental and physical examination prior to petitioning to restore his medical license. The Director issued a decision on August 21, 1991, adopting the findings, conclusions, and recommendation of the Medical Board to indefinitely suspend Ziporyn's medical license and to revoke his controlled substance license. Ziporyn did not seek review of the Director's order.

In September 1991, Ziporyn petitioned the Director for restoration of his medical license. His petition acknowledged that he had at-

tempted no educational work and that he had received no psychotherapy or counseling. Pursuant to Ziporyn's request, a hearing was held on the petition for restoration. At the hearing, Ziporyn said that he was seeking restoration of his medical license; he was not seeking restoration of his controlled substance license. He argued that he had done nothing wrong in the first place and that he did not need to attend follow-up courses because he was "well prepared to teach the teachers." He also stated that, since the time that his license was suspended, he had continued to hold himself out as a physician.

The hearing officer announced his findings at the hearing. He found that Ziporyn had not shown by a preponderance of the evidence that he merited the public trust and that he had not adhered to the Director's order suspending his license, as evidenced by the fact that he continued to hold himself out as a doctor and had failed to surrender his license certificate to the Department as he was ordered to do. The Medical Board adopted the hearing officer's findings and recommended to the Director that she deny Ziporyn's petition for restoration. The Director issued a decision on April 14, 1992, denying Ziporyn's petition for restoration.

Ziporyn sought restoration of his medical license a second time in April 1996. He stated in his second petition that he had attended no continuing or remedial education since the suspension was imposed. Also, he had not sought medical treatment, psychotherapy, or counseling since the suspension. At a hearing held on his second petition, Ziporyn testified that he had not complied with the Director's order that he had to take a refresher course in posttraumatic stress disorder and that he pass a mental examination prior to restoration of his license. Ziporyn stated that he considered the conditions contained in the Director's order to be "irrelevant." He also stated that he did not consider himself a danger to the public and felt that he had done nothing wrong. Ziporyn said that his license had been suspended for more than five years at that time, and he felt that was "clearly out of proportion to the infractions."

On November 15, 1996, the administrative law judge (ALJ) issued a report and recommendation. The ALJ recommended that the suspension of Ziporyn's medical license remain in effect until Ziporyn complied with the remedial action ordered by the Director. The ALJ found that the mere passage of time did not justify the restoration of his medical license.

The Medical Disciplinary Board adopted the ALJ's findings and recommended to the Director that Ziporyn's license remain indefinitely suspended. On April 21, 1997, the Director issued an order denying Ziporyn's petition for restoration of his medical license.

Ziporyn filed a timely complaint for administrative review of the Director's decision, asking the court to restore his license. Ziporyn claimed that indefinite suspension "shocks the conscience, is unfair, unwarranted, unreasonable, excessive and disproportionate to the offense." Ziporyn alleged that the condition that he undergo a mental and physical examination was "totally improper" and the requirement that he take a refresher course in posttraumatic stress disorder was "ludicrous."

On December 17, 1997, the court entered an order finding that the indefinite suspension of Ziporyn's license was arbitrary and excessive and that any penalty beyond five years was also arbitrary and excessive. The court remanded the matter for reconsideration of the sanction imposed by the Director.

On March 18, 1998, the Medical Disciplinary Board issued its recommendation to the Director. Noting that Ziporyn's license had been suspended because he had "prescribed massive quantities of Demoral for non-therapeutic purposes, and had failed to exercise accepted standards of medical care," the Board stated that it had "thoroughly reviewed this matter" and recommended to the Director that Ziporyn's medical license be indefinitely suspended. The Board pointed out that Ziporyn had never sought review of the Director's original order suspending the license and imposing conditions that had to be fulfilled before the license could be restored. Additionally, the Board stated that it was Ziporyn's burden to prove that he is sufficiently rehabilitated to warrant the public trust.

The Board found that Ziporyn had submitted no evidence that he had completed the terms that the Director had imposed upon him in 1991. The Board stated that it was being consistent with its own precedent in denying restoration unless the petitioner has submitted evidence that he has fully complied with all terms imposed by the Director despite Ziporyn's characterization of those terms as "irrelevant." The Board recommended that Ziporyn's medical license remain indefinitely suspended and that Ziporyn fulfill the following terms: (1) proof of completion of a refresher course in the treatment of posttraumatic stress syndrome; (2) proof of passing a mental and physical examination; and (3) proof of passing a clinical competency examination preapproved by the medical director such as the "SPEX" examination. This third requirement was added because of Department regulations that require such an examination by any physician whose license has expired and who has not practiced medicine in the preceding three years. See 68 Ill. Adm. Code § 1285.130(c)(5) (March 26, 1999).

On March 31, 1998, the Director entered an order adopting the Board's findings of facts, conclusions of law, and recommendations.

Ziporyn again sought administrative review in the circuit court. The court entered an order stating that Ziporyn had to file a new complaint for administrative review if he wished to challenge the Director's most recent order. Ziporyn then filed a complaint for administrative review asking the court to reverse the Director's March 31 order and direct the Department to immediately restore his medical license. The Director and the Department responded by asking the court to affirm the Director's decision.

At a hearing on May 20, 1998, the court stated that it could not understand what the Department was requiring of Ziporyn. Noting that the Director had included a new condition—a competency examination—in her order issued after remand, the court made the following comment:

> "You know, you are talking to a judge here who has seen many reports by this particular forensic psychiatrist for many years at 26th and California as a prosecutor, defense attorney and criminal court judge.
>
> I am familiar with his work over the years and I've seen it so there are some things that just leap out at me from this. And my question is, the [D]epartment has a new [requirement] in here, about taking this examination and so on or some other thing that is pre-approved by the medical coordinator ***. It's getting worse and worse. In other words, the Court has determined that he has been treated in a very bad fashion."

On August 7, 1998, the circuit court entered an order reversing the Director's decision and ordering the Director and the Department to terminate the indefinite suspension of Ziporyn's medical license. The court found that the Director had used improper criteria, reasoning and law in refusing to lift the indefinite suspension of Ziporyn's medical license. Additionally, the court concluded that the continuing sanctions against Ziporyn five years after the original imposition of sanctions was unrelated to the purpose of the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 1996)) to protect the public from dangerous medical practices and practitioners.

Finding that Ziporyn had been rehabilitated, the court stated that the law does not necessarily require such a determination be preceded by a finding of compliance with the conditions of restoration imposed in the original suspension order. The court rejected the SPEX requirement considering that the "SPEX exam is a 7 hour, 350 question, computer-administered exam" in light of Ziporyn's age, his computer illiteracy, his exclusive specialty of psychiatry and his "unblemished record" before and after the incident giving rise to original complaint.

The Department and the Director filed a notice of appeal on August 14, 1998.

## JURISDICTION

The Department first argues that the circuit court lacked jurisdiction to consider whether Ziporyn's medical license should have been indefinitely suspended and whether the conditions imposed by the Department as a condition for its restoration were appropriate. Ziporyn responds that the trial court did not consider the disciplinary order that resulted in Ziporyn losing his medical license but, rather, simply considered all factors in determining whether Ziporyn had been rehabilitated, including the facts adduced at the prior hearing. Ziporyn argues that it was necessary for the Department to consider the seriousness of the offense for which his license was suspended and whether he had made restitution to the injured party in considering the rehabilitation question.

This dispute revolves around the proper interpretation of section 1285.255 of the rules for the administration of the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 1996)). The rule states:

"Rehabilitation.

(a) Upon written application to the Disciplinary Board for restoration of a license or a certificate, or for any other relief, the Disciplinary Board shall include, but not be limited to, the following considerations in determining whether the person is to be deemed sufficiently rehabilitated to warrant the public trust:

(1) The seriousness of the offense which resulted in the disciplinary action being considered or being taken;

(2) The length of time which elapsed since the disciplinary action was taken;

(3) The profession, occupation and outside activities in which the applicant has been involved;

(4) Any counseling, medical treatment, or other rehabilitative treatment received by the applicant;

(5) Continuing medical education courses or other types of courses taken to correct the grounds for the disciplinary action being considered or having been taken;

(6) The results of a clinical competency examination, designated by the Disciplinary Board and paid for by the petitioner;

(7) Written reports and oral testimony by peer review committees or other persons relating to the skill, knowledge, honesty, integrity and contriteness of the applicant;

(8) Restitution to the injured parties;

(9) Future plans of the applicant;

(10) Involvement of the applicant's family and friends in his rehabilitative process;

(11) A written report of a physical or mental examination given by a physician selected by the Disciplinary Board and paid for by the person being examined;

(12) Any other information evidencing rehabilitation which would bear upon the applicant's requested relief or restoration of a license;

(13) Whether the order imposing sanctions was appealed, and if so, whether a reviewing court granted a stay or delay of imposition of the sanction;

(14) The date and disposition of any other petition for restoration filed since the last sanction was imposed; and

(15) Whether probationary terms which may have been imposed have been complied with." 68 Ill. Adm. Code § 1285.255 (1999).

■ We reject both the position of the Department and that of Ziporyn on the jurisdictional question raised. The Director appears to argue that the circuit court may not consider on administrative review the underlying facts of a previous suspension in deciding whether an applicant has been sufficiently rehabilitated until the applicant first establishes that he has fulfilled all of the requirements imposed upon him by the Department. Section 1285.255, however, states quite clearly that whether the applicant has complied with his probationary terms is merely one of the "considerations" that the Department should use in weighing the applicant's rehabilitation. Although the Department is free to weigh this factor as it sees fit in making its decision, it may not disregard consideration of the other factors set out in the section in addressing an applicant's petition, and the circuit court's *jurisdiction* over the petition on administrative review is wholly unaffected by the applicant's failure to meet prior probationary conditions.

Equally erroneous, however, are Ziporyn's attempts to establish that unfairness in the prior proceeding, including the alleged severity of his sanction, somehow undermines the Department's denial of his petition for reinstatement. Whether the prior disciplinary proceedings were unfair is irrelevant to the circuit court's consideration on review of a petition for reinstatement. In other words, if the Department wishes to stand on the results of the prior proceedings, it has the absolute right to do so as any litigant might stand on a final judgment no longer subject to appellate attack. The time for Ziporyn to bring a claim to the circuit court asserting the arbitrariness of his sanction or the unfairness of the administrative proceedings is strictly limited by section 3—103 of the Administrative Review Law (735 ILCS 5/3—103 (West 1996)) (the Act). That section sets a time limit of no more than 35 days from the date of the Department's decision for a petitioner to

challenge the Department in the circuit court. *Krain v. Department of Professional Regulation*, 291 Ill. App. 3d 988, 990, 684 N.E.2d 826 (1997). In that this time passed, questions regarding the findings and determinations of the Department are settled—at least for purposes of administrative review. See *Krain v. Department of Professional Regulation*, 295 Ill. App. 3d 577, 580-81, 696 N.E.2d 692 (1998) (courts are expressly precluded from granting statutory, equitable or common law modes of review outside the express provisions of the Act, and all litigation must come to an end at some point in time). ·

## REFUSAL OF THE DEPARTMENT TO REINSTATE ZIPORYN'S LICENSE

█ █ We agree completely, however, with the Department's determination regarding the substance of Ziporyn's petition for restoration. On review to the circuit court of a claim by an applicant that he has been wrongfully denied restoration of his medical license under the terms of section 1285.255, the sole question presented is whether the Department's determination is against the manifest weight of the evidence. *Wedeberg v. Department of Registration & Education*, 94 Ill. App. 2d 451, 237 N.E.2d 557 (1968). We have carefully reviewed the record and find almost no support for Ziporyn's claim that he has been sufficiently rehabilitated to warrant restoration.

First, evidence at Ziporyn's initial hearing indicated that he had misdiagnosed posttraumatic stress syndrome for one of his patients and prescribed "massive quantities" of a class II narcotic, Demoral, outside the applicable standards for psychiatric care. The evidence further suggested that this patient received the drug on Ziporyn's prescriptions over a period of more than two years and that she subsequently suffered addiction. Ziporyn has consistently argued that he prescribed Demoral only out of concern for this patient's well being, but the Department never made such a determination.

Ziporyn argues that the passage of time since he was subject to discipline somehow suggests his rehabilitation. While recognizing that part of the reason for suspending Ziporyn's license may have been to reprimand his harmful conduct, and while conceding that the loss of a professional license for a period of five years is a substantial punishment, suspension of Ziporyn's license was not only to punish his actions; rather, the suspension of Ziporyn's license was meant principally to provide assurances to the public that the type of lapsed judgment evidenced in the initial hearing would not recur. Nothing indicates that Ziporyn has used the passage of time since his suspension to establish his rehabilitation, and the concerns that initially existed regarding Ziporyn's practice of psychiatry remain unchanged.

Neither does consideration of Ziporyn's professional, occupational and outside activities indicate that Ziporyn has been rehabilitated in any significant way. In fact, he indicated at the hearing that he has not stopped practicing medicine.

Ziporyn admits that he has not sought or received any counseling, medical treatment, or other rehabilitative treatment following the suspension of his license. Neither has he participated in any continuing medical education courses or other types of courses taken to correct the grounds for his disciplinary action. Moreover, although the Department ordered one, Ziporyn has refused to submit to a clinical competency examination.

Ziporyn has submitted no written reports or presented any oral testimony by peer review committees or other persons relating to his skill, knowledge, honesty and integrity. He has refused to admit the impropriety of his prior conduct and has remained obstinate regarding the incident that caused him to lose his medical license.

Although the record indicates that Ziporyn's former patient may have suffered injury due to her use of Demerol, there is no evidence that Ziporyn has attempted restitution.

Ziporyn has not testified to any future plans he has with regard to his professional license, although he has demonstrated a continued unwillingness to subject himself to the Department's authority. There is no indication of any involvement of Ziporyn's family and friends in his rehabilitative process as he continues to deny that he has done anything improper. Although the Department ordered a physical and mental examination, Ziporyn has yet to submit to one as ordered.

Neither does consideration of the remaining factors set out by section 1285.255 support reinstating Ziporyn's Illinois license to practice medicine. Consideration of Ziporyn's first petition for reinstatement failed to indicate any progress in Ziporyn's rehabilitation. Most seriously, the record establishes unequivocally that the probationary terms that were imposed by the Department have yet to be complied with.

On review of an administrative decision, findings and conclusions of the agency on questions of fact are held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1996). As we have noted, the reviewing court's function is to ascertain whether the findings and conclusions of the agency were against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992); *Wedeberg*, 94 Ill. App. 2d at 456.

The State of Illinois has a legitimate interest in regulating medical professionals in order to promote and protect the public welfare. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 538 N.E.2d 1140 (1989). "The very purpose of licensing is to insure

professional competency for the protection of the public." *Leu v. Department of Registration & Education*, 88 Ill. App. 3d 255, 261, 410 N.E.2d 467 (1980). The standard of review we and the circuit court apply to appeals from the Department involving the sanctioning of a professional under its jurisdiction includes deference to the Department's expertise and experience in protecting the public welfare. *Abrahamson*, 153 Ill. 2d at 99; *Massa v. Department of Registration & Education*, 116 Ill. 2d 376, 507 N.E.2d 814 (1987). It is the Department, and not the courts, that bears the responsibility to determine sanctions for individual cases necessary to protect the public. *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 639 N.E.2d 1318 (1994); *Massa*, 116 Ill. 2d at 388.

Apart from attacking the suspension of his medical license and ridiculing the remedial action ordered by the Director, Ziporyn merely argued that he was entitled to his license because of the passage of time. The circuit court's acceptance of this argument ignored the purposes underlying the Act and the other considerations mandated by section 1285.255. The court's determination that Ziporyn has been rehabilitated as to warrant the public's trust, and the court's finding that his practice of psychiatry imposes no danger to the public are simply not supported by the record. The court's finding that requiring Ziporyn to submit to a clinical examination such as the SPEX test is arbitrary, unreasonable and unnecessarily burdensome is patently erroneous as it is contrary to the terms of section 1285.130 of the Administrative Code (68 Ill. Adm. Code § 1285.130 (March 26, 1999)), a provision which has the force and effect of law. See *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 162, 613 N.E.2d 719 (1993). Accordingly, the court's order must be reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed. The order of the Department suspending Ziporyn's license indefinitely is reinstated.

Circuit court judgment reversed; order of the Department reinstated.

CAMPBELL and BUCKLEY, JJ., concur.