FOURTH DIVISION

   MAY 11, 2000 

          No. 1-98-3133

     IN THE

 APPELLATE COURT OF ILLINOIS 

  FIRST JUDICIAL DISTRICT

ALA ALBAZZAZ, ) Appeal from the

Plaintiff-Appellant, ) Circuit Court of

) Cook County.

)

) No. 98 CH 911

ILLINOIS DEPARTMENT OF )

PROFESSIONAL REGULATION and ) Honorable

NIKKI ZOLLAR, Director, ) Thomas P. Durkin,

Defendants-Appellees. ) Judge Presiding.

JUSTICE BARTH delivered the opinion of this court:

Plaintiff, Ala Albazzaz, M.D., filed a complaint for administrative review against the Illinois Department of Professional Regulation (the Department) and its Director in the circuit court of Cook County.  Therein, Albazzaz contested the Department's conclusion that he had violated two provisions of the Medical Practice Act in connection with the care and treatment of six female patients.  The circuit court affirmed the Director's order in its entirety.  That order provided, among other things, for the indefinite suspension of Albazzaz's license (but for a minimum of five years), and for Albazzaz to pay a fine of thirty thousand dollars ($30,000), due within thirty days from the date the Director signs a final order.

Albazzaz has raised the following issues on appeal: whether the findings were against the manifest weight of the evidence; whether there was prejudicial error in not admitting into evidence expert testimony offered by Albazzaz; whether there was prejudicial error in not admitting other evidence offered by Albazzaz in mitigation of the sanction; whether there was prejudicial error in using an administrative warning letter as evidence in aggravation; whether the sanctions imposed on Albazzaz are unduly harsh, intended as punishment or otherwise violative of law; and whether the administrative complaint violated 5 ILCS 100/10-25(A)(3) of the Administrative Procedures Act.

      
Background

This matter is based on a second amended complaint filed by the Department against Albazzaz.  Six counts relating to the care and treatment of six female patients remained at the end of the administrative hearing.  Those counts alleged that Albazzaz violated the Medical Practice Act of 1987 and Department rules by engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public and by engaging in immoral conduct in the commission of any act, including but not limited to, the commission of an act of sexual misconduct related to [his] practice.  (225 ILCS 60/22(A)(5) and (A)(20) (1996)).

Albazzaz, 46 years old at the time of the 1997 hearing, graduated from medical school in his native Iraq.  He is married and has three children.  Albazzaz left Iraq in 1981, after completing a medical internship, one year of military service, and approximately two years of teaching and private practice in general medicine.  After coming to Chicago, he completed a one-

year pediatric residency with Rush University Medical School and a three-year internal medicine residency with Loyola University, Hines Veterans Administration Hospital.  After working two years in hospital emergency rooms, Albazzaz was hired as a primary care physician by Humana Managed Health Care.  Licensed in Illinois and Indiana, Albazzaz is Board certified in internal medicine.  He has no special training in gynecology.

Prior to the commencement of his employment with Humana, the Department investigated a complaint lodged against Albazzaz.  At the conclusion of the investigation in June, 1991, the Department sent Albazzaz an "Administrative Warning Letter."  In that letter, the Department indicated that it had decided against initiating formal charges for allegedly engaging in unprofessional conduct of a character likely to deceive, defraud or harm the public.  The Department further indicated therein that its decision was based in part on Albazzaz's agreement that a nurse be present during his future examinations of female patients.  Humana was unaware of the administrative warning letter.

Each of the women who testified during the administrative hearing had HMO coverage and received care at the Humana clinic where Albazzaz worked.  Albazzaz was assigned as their primary care physician.  Two of the women also testified at Albazzaz's criminal trial, which resulted in acquittal. Those two women met in connection with that trial; otherwise, none of the six women knew each other. 

[Nonpublishable material removed under Supreme Court Rule 23]. 

The Hearing Officer's Report and Recommendation

At the close of the evidence, the hearing officer issued a report, recommending that the Medical Disciplinary Board adopt his findings and conclusions, including the following: the six complaining witnesses were credible; Albazzaz was not credible; and Albazzaz violated the Medical Practice Act of 1987 by engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public and by engaging in immoral conduct in the commission of any act, including but not limited to, the commission of an act of sexual misconduct related to the licensee's practice (225 ILCS 60/22 (A)(5) and (A)(20) (1996)).  The hearing officer also recommended that Albazzaz's medical license be suspended indefinitely for a minimum of 5 years, that he be fined $30,000, that he be required to successfully complete a Special Purpose Examination ("SPEX") prior to petitioning for restoration, and that any restoration be conditioned on Albazzaz not being allowed to examine female patients in an unchaperoned environment.

The Director's Decision and the Recommendation of the Medical Disciplinary Board

  The Board adopted the findings of fact and conclusions of law made by the hearing officer.  The Board rejected, in part, the hearing officer's recommendation regarding the type of discipline imposed on Albazzaz's license, making instead the following recommendations: indefinite suspension for a minimum of 5 years; payment of a $30,000 fine within 30 days of the Director's final order; and the successful completion of the SPEX.

Additionally, in conjunction with a petition for restoration, Albazzaz would be required to provide: documentation of timely payment of the $30,000 fine and successful completion of the SPEX; a written report of a psychiatric evaluation performed by a psychiatrist pre-approved by the Medical coordinator within 6 months prior to the filing of the petition, which shows that Albazzaz can practice medicine with reasonable judgment, skill and safety; and proof that he is deemed sufficiently rehabilitated to warrant the public trust in accordance with department regulations.  The Board also required that restoration be conditioned upon Albazzaz not being allowed to examine or treat female patients.

Albazzaz filed a timely petition for rehearing.  The Director issued a decision denying the petition for rehearing and adopting the findings, conclusions, and recommendations of the Board.  Albazzaz filed a timely complaint for administrative review.  The circuit court of Cook County affirmed the Director's decision in its entirety.  Albazzaz timely appealed.

    
Analysis

[Nonpublishable material removed under Supreme Court Rule 23]

IV. The Sanctions
     

Albazzaz argues that the sanctions imposed were unduly harsh, intended as punishment, or otherwise violative of law.  Specifically, he contends that in addition to the fact that they are impermissibly punitive, the Department lacked the authority to issue the sanctions herein in the first place.

Preliminarily, we note that a reviewing court will not interfere with an agency's decision to impose a certain sanction unless the agency acted unreasonably or arbitrarily or chose a sanction which is unrelated to the purpose of the statute.  
Ballin Drugs, Inc. v. Illinois Department of Registration and Education
, 166 Ill. App. 3d 520, 531, 519 N.E.2d 1151 (1988).  The State of Illinois has a legitimate interest in regulating medical professionals in order to promote and protect the public welfare, and the Medical Practice Act was enacted in accordance with this goal.  
Potts v. Illinois Department of Registration and Education
, 128 Ill. 2d 322, 333, 538 N.E.2d 1140 (1989).  

Next, we point out that although it is the Department, and not the courts, that bears the responsibility to determine sanctions for individual cases necessary to protect the public, a reviewing court has the authority to review a sanction imposed.  
Obasi v. Department of Professional Regulation
, 266 Ill. App. 3d 693, 704, 639 N.E.2d 1318 (1994).  A sanction will be affirmed unless it constitutes an abuse of discretion.  This will be found where the Department imposes a sanction that is (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute.  
Pundy v. Department of Professional Regulation
, 211 Ill. App. 3d 475, 488, 570 N.E.2d 458 (1991).

Albazzaz was found to have committed repeated violations of the Medical Practice Act, and these violations involved multiple patients.  The Department imposed a number of sanctions, each of which is challenged by Albazzaz, and each of which will therefore be reviewed in turn.

First, the Department recommended indefinite suspension, but for a minimum of 5 years, of Albazzaz's license.  Albazzaz argues that such a suspension is harsh, effectively ending his medical career.  We agree that the sanction is severe although we decline to find it overly harsh, or otherwise an abuse of the Department's authority.  We therefore defer to the Department's expertise and experience.  
Obasi
, 266 Ill. App. 3d at 704.

Albazzaz additionally argues that the Department is without the authority to set a definite term for his suspension.  This argument is based on Sections 60/22 and 60/43 of the Medical Practice Act of 1987.  (225 ILCS 60/22 and 60/43 (1998)).  Section 60/22 provides, in part relevant to this appeal:

"(A) The Department may revoke, suspend,

place on probationary status, or take any

other disciplinary action as the Department

may deem proper with regard to the license

or visiting professor permit of any person

licensed under this Act to practice

medicine, or to treat human ailments

without the use of drugs and without operative

surgery upon any of the following grounds:

...

(5) Engaging in dishonorable, unethical 

or unprofessional conduct of a character

likely to deceive, defraud or harm the public.

... 

(20) Immoral conduct in the commission of

any act including, but not limited to

commission of an act of sexual misconduct

related to the licensee's practice."

(225 ILCS 60/22 (1998)).

And Section 60/43 provides:

"At any time after the suspension, revocation,

placing on probationary status, or taking

disciplinary action with regard to any license,

the Department may restore it to the accused

person, or take any other action to reinstate

the license to good standing, without 

examination, upon the written recommendation

of the Disciplinary Board."  (225 ILCS 60/43

(1998)).

Albazzaz contends, without citation to relevant authority, that 60/43 allows a license to be restored at any time, and thus any attempt by the Department to impose a minimum duration for suspension is in conflict with this language and impermissible.  Moreover, he maintains, there is no statutory language authorizing the Department to impose a suspension for a certain amount of time.  We reject Albazzaz's interpretation of these Sections, both individually and read together.  

Revocation or suspension of a medical license is a powerful sanction which will, at least temporarily, deprive the medical professional of his or her livelihood.  
Massa v. Department of Registration and Education
, 116 Ill. 2d 376, 388, 507 N.E.2d 814 (1987).  We are aware that, in developing a scheme of regulation in this area, the general assembly has chosen to require that the Medical majority of members of the Disciplinary Board be physicians.  (225 ILCS 60/7(A) (1998)).   We believe it is reasonable to infer that, based on its composition, the Board brings to its disciplinary decisions the perspective of the medical profession.  Such a perspective obviously entails a recognition of the considerable ramifications of suspending a license, and therefore suspension as a sanction is not likely to be lightly imposed.  

Conversely, the impact of a disciplinary decision, and the ability of the Board to carry out the purposes of the Medical Practice Act would be greatly undermined if, as Albazzaz urges, Section 60/43 were read to allow a physician to petition for restoration the day after the Director signs an order suspending his or her license for 5 years.  Such a scenario would severely impair the ability of the Disciplinary Board to carry out the Act's purposes which, as noted above, include regulating the medical profession while promoting and protecting the public welfare.  Rather, we interpret the language of 60/43 to mean that once a physician has completed the term of his or her sanction, the Department may, "
at any
 
time after
," restore the license to him or her.  (225 ILCS 60/43 (1998) emphasis added)). Such a reading is, in our view, consistent with Section 1285.255 of the Rules for Administration of the Medical Practice Act, which contains a (non-exhaustive) list of factors for the Disciplinary Board to consider in determining whether to grant a petition for the restoration of a medical license.  Among those factors are "[t]he length of time which elapsed since the disciplinary action was taken;" "[t]he profession, occupation and outside activities in which the applicant has been involved;" [a]ny counseling, medical treatment, or other rehabilitative treatment received by the applicant;" and "[w]hether probationary terms which may have been imposed have been complied with."  (68 Ill. Admin. Code 1285.255 (1998)).  These factors clearly contemplate that a period of time will have passed since the imposition of the sanction, during which the offender, it is hoped, will move towards rehabilitation and renewed fitness to practice medicine.  See generally 
Middleton v. Clayton
, 128 Ill. App. 3d 623, 629, 470 N.E.2d 1271 (1984).  This in turn connotes that the Board, in the exercise of its knowledge and experience and based on the severity of the offense(s) in question (
Massa
, 116 Ill. 2d at 388), may set at least a minimum term on a sanction when it is issued.  Illinois courts have repeatedly affirmed such decisions.  See e.g., 
Ziporyn v. Zollar
, 311 Ill. App. 3d 638, 724 N.E.2d 180 (1999) (indefinite suspension of medical license); 
Siddiqui v. Department of Professional Regulation
, 307 Ill. App. 3d 753, 718 N.E.2d 217 (1999) (6 month suspension of medical license); 
Singh v. Department of Professional Regulation
, 252 Ill. App. 3d 859, 625 N.E.2d 656 (1993) (minimum 5 year suspension of pharmacist's license); and 
Wegmann v. Department of Registration and Education
, 61 Ill. App. 3d 352, 377 N.E.2d 1297 (1978) ( 6 month suspension of dentistry license).

Finally on this issue, Albazzaz points to the language of 60/22 and urges this court to find that the Board was without statutory authority to impose a time frame on the suspension of his license, since that Section provides only for the imposition of the sanction itself.

Administrative agencies, such as the Disciplinary Board, exercise purely statutory powers and possess no inherent or common law powers.  
Newkirk v. Bigard
, 109 Ill. 2d 28, 37, 485 N.E.2d 321 (1985).  Therefore, any authority the agency has to act must arise either from the express language of the Act, or by fair implication and intendment from those express provisions, as an incident to achieving the objectives for which the agency was created.  
City of Chicago v. Illinois Commerce Commission
, 294 Ill. App. 3d 129, 136-37, 689 N.E.2d 241 (1997).  As noted above, the Medical Practice Act was enacted to ensure that the healthcare needs of the citizenry are being attended to by qualified, competent medical personnel.  To that end, the Act gives the Disciplinary Board the explicit power to impose the sanction of suspension when certain specified violations have been proven.  (225 ILCS 60/22 (1998)).  We find that, by fair implication and intendment from that express provision, the Board is also authorized to impose a length of time, as was done in the instant case, during which a suspension should be enforced.

Next, we turn to the Board's requirement that, as a condition on the restoration of Albazzaz's license, he not be allowed to examine or treat female patients.  Albazzaz contends that this too is a sanction which is beyond the Board's authority to impose.  In support, he points to the language of Section 60/37, which authorizes the Board to limit the scope of a licensee's practice only under certain circumstances.  (225 ILCS 60/37 (1998)).  That Section provides:

"If disciplinary action, other than 

suspension or revocation is taken, the

Disciplinary Board may recommend that

the director impose reasonable limitations

and requirements upon the accused registrant

to insure compliance with the terms of probation

or other disciplinary action including, but not

limited to, regular reporting by the 

accused to the Department of their actions, 

placing themselves under the care of a 

qualified physician for treatment, or

limiting their practice in such a manner 

as the Director may require."  (225 ILCS

60/37 (1998)). 

 

Albazzaz contends that the Board's authority to limit the scope of practice is triggered only where disciplinary action 
other than
 suspension or registration is taken. We agree.

The interpretation of a statute is a question of law.  
Oregon Community Unit School District No. 220 v. Property Tax Appeal Board
, 285 Ill. App. 3d 170, 175, 674 N.E.2d 129 (1966).  An administrative agency's finding on a question of law or an interpretation of a statute, including a statute it is charged with administering, is not binding upon this court.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).  The language of 60/37 suggests that the Board's options, suspension/revocation, or other disciplinary action (meaning the accused would still retain his or her license), are mutually exclusive with respect to its authority to impose additional limitations.  The logic is apparent, as there would be little need to limit the scope of practice of a medical professional whose license has 
already
 been suspended or revoked.  We accordingly determine that this sanction is unreasonable.  

Next, Albazzaz argues that the sanction of a $30,000 fine, to be paid within thirty days of the date on which the Director signs a final order, is unduly harsh in light of his dire financial circumstances as of the date of the hearing, and furthermore, is without statutory authority.  We note first that the imposition of a fine as a sanction, even where imposed in conjunction with suspension, is authorized by Section 60/22(A) of the Medical Practice Act.  (225 ILCS 60/22(A)(1998)).  And as to the "harshness" of the amount of the fine, we again defer to the agency's exercise of its discretionary authority.
(footnote: 1)   
Dharmavaram v. Department of Professional Regulation
, 216 Ill. App. 3d 514, 529, 576 N.E.2d 361 (1991).  However, we do agree with Albazzaz that there is no statutory authority permitting the Board to mandate payment of the fine within thirty days.  See 
Armstead v.
 
Sheahan
, 298 Ill. App. 3d 892, 894, 700 N.E.2d 149 (1998) (actions or decisions which are beyond the scope of an administrative agency's authority are void).  Thus, although prompt payment of the fine is certainly desirable, it cannot, under the authority of the Medical Practice Act, be mandated.

Next, Albazzaz argues that the requirements imposed by the Board with respect to his filing of a petition for restoration will eventually be heard by a different Board, at a different time.
(footnote: 2)  The discretion of that Board, he explains, should not be fettered by the pronouncements of this Board, five years prior.  We find Albazzaz's argument less persuasive than his reference to Administrative Rule 1285.255.  (68 Ill. Admin. Code 1285.255 (1998)).  As noted earlier in this opinion, this Rule sets forth the criteria for the Board to consider when evaluating a petition for the restoration of a license.  

Administrative agencies are authorized, within the statutes which create them, to determine, define and implement such statutes through the adoption of rules and regulations.  See e.g., 
Granite City Division of National Steel Co. v. Illinois Pollution Control Board
, 155 Ill. 2d 149, 155, 613 N.E.2d 719 (1993); 225 ILCS 60/8(F).  When an agency has acted in its rulemaking capacity, a court will not substitute its judgment for that of the agency.  
Granite City
, 155 Ill. 2d at 162.  By the same token, an agency is 
itself
 bound by the rules it promulgates, and must adhere to them.  
Kaszynski v. Department of Public Aid
, 274 Ill. App. 3d 38, 45, 653 N.E.2d 1330 (1995).  In this case, the Licensing Board has promulgated a set of factors which must be considered each time it reviews a petition for restoration.  This list (though non-exhaustive) purports to contain the sole bases for a Board's review in such a hearing.  When and if he petitions for restoration of his medical license, Albazzaz is therefore entitled to be evaluated on the basis of those considerations only, without regard to the "requirements" set by the Board which imposed his suspension.

Thus, while this court does not presume to substitute its judgment for that of the Board, it is our duty to see that, once a rule has been promulgated, the agency abides by its provisions.  See 
Monsanto Co. v. Pollution Control Board
, 67 Ill. 2d 276, 289-

91, 367 N.E.2d 684 (1977).  We find the petition for restoration requirements to be invalid.

     
Conclusion
 

For the foregoing reasons, the decision of the Department is affirmed in part, reversed in part, and remanded with directions for entry of an order consistent with this opinion.

Affirmed in part, reversed in part, and remanded. 

SOUTH and HALL, J.J., concur.

FOOTNOTES
1: 60/22 allows for the imposition of a fine up to $5,000 for each violation of the Act; Albazzaz was found to have committed 6 separate violations.

2: These requirements include: (1) that he provide documentation of having paid the fine within thirty days; that he provide documentation of having successfully completed the SPEX examination; (3) that he submit a written report of a psychiatric evaluation performed withing 6 months of the filing of the petition, which states that he can practice medicine with reasonable judgment and safety; (4) that psychiatrist must be pre-approved by the Medical coordinator, and Albazzaz must pay for the exam himself; and(5) that he prove he is sufficiently rehabilitated to warrant the public trust in accordance with Section 1285.255.